Darrell **FORBES**, Appellant (Defendant below),

v.

**STATE** of Indiana, Appellee (Plaintiff below).

No. 59S01–0312–CR–608.

Supreme Court of Indiana.

June 22, 2004.

David E. Mosley, Brad Jacobs, Jeffersonville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF APPEALS, NO. 59A01–0210–CR–416.

BOEHM, Justice.

Darrell Forbes was transported to a hospital in Kentucky after a car he was driving crashed in a single car accident in Indiana which resulted in Michael Smith's death. The State issued a subpoena to the hospital for his blood alcohol content test results, but the subpoena was not issued in full compliance with the Uniform Act to Secure the Attendance of Witnesses from Without the State. Ind.Code § 35–37–5–1 (1998). Forbes was charged in Indiana with operating while intoxicated and operating with a BAC of .10% or more. We hold that the hospital's compliance with the subpoena despite its noncompliance with the Uniform Act renders the test admissible in evidence in the Indiana court.

**Factual and Procedural Background**

Forbes was injured and Michael Smith was killed in a one car accident in Orange County, in Southern Indiana. Indiana State Trooper Gregory Ashby and emergency personnel arrived at the crash scene. Ashby requested a blood alcohol content ("BAC") test of Forbes, but Forbes's injuries prevented a test at the scene and Forbes was transported to the University of Louisville Hospital in Louis-

ville, Kentucky. At Ashby's request, relayed by the emergency personnel, the hospital conducted a BAC test.

Early the next morning, Ashby contacted the hospital and was told that he would need a subpoena to obtain the test results. One week after the crash, Ashby obtained an Indiana subpoena from the Orange County, Indiana Circuit Court Clerk and drove with another trooper to meet with the judge of the Jefferson Circuit Court in Louisville, Kentucky. The Kentucky judge signed the Indiana subpoena, and Ashby then obtained a Kentucky subpoena from the Jefferson County Circuit Court clerk and took both subpoenas to the hospital which is in Jefferson County where he obtained the test results. The hospital surrendered the test in response to the subpoena. Ashby neither requested nor received any other medical records.

In a parallel effort to obtain the test results, the Orange County, Indiana Prosecutor's office contacted the Prosecutor's office in Clark County, Indiana, which is across the Ohio river from Louisville, Kentucky. The Clark County Indiana prosecutor sent a Kentucky subpoena by certified mail to the hospital. The hospital responded by sending the requested documents to the Clark County Prosecutor's office, and that office released them to the Orange County Prosecutor.

Forbes was charged in Orange County, Indiana with 1) operating a vehicle while intoxicated resulting in death, and 2) operating a vehicle with a blood alcohol content of .10% or more resulting in death. The trial court denied Forbes's motion to suppress the BAC test results and certified the order for an interlocutory appeal. The Court of Appeals reversed, holding that the evidence must be suppressed because it was not secured through procedures specified in the Uniform Act to Secure the Attendance of Witnesses from Without the State. Ind.Code § 35–37–5–1 (1998). This Court granted transfer. *Forbes v. State,* 804 N.E.2d 760 (Ind.2003).

## I. Effect of Noncompliance with the Uniform Act

■ The Uniform Act has been adopted by both Indiana and Kentucky. Ind.Code § 35–37–5–1 *et seq.* (1998); Ky.Rev.Stat. Ann §§ 421 .230–421.270 (1992). It is designed to provide a method of compelling attendance of witnesses or documents from another state, and authorizes the issuance of subpoenas to that end. *See generally,* Jay M. Zitter, Annotation, *Availability Under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings of Subpoena Duces Tecum,* 7 A.L.R.4th 836, 837 (1981). The Uniform Act does not provide any explicit remedies for failure to follow its procedure and does not purport to be the exclusive method for sharing information across state lines. The Indiana version of the Uniform Act, in Indiana Code section 35–37–5–5, provides for compelling a witness in another state to appear in Indiana. To invoke the statute, a judge of the Indiana court is to issue a "certificate" reciting that the person is sought as a material witness and specifying the number of days attendance is required. The certificate is to be "presented" to a judge in the county of the other state (in this case Kentucky) where the witness is found. The Kentucky Uniform Act provides that upon "presentation" of a certificate from another state under the Uniform Act, the judge of a court in the county where the witness is found is to set a hearing and issue a summons commanding attendance in the Indiana proceeding. Ky.Rev.Stat. Ann. § 421.240.

The Court of Appeals took the view that the State was required to follow the Uniform Act to obtain the test. If so, charges must be filed against Forbes or a grand jury impaneled in Indiana in order to meet

the requirement of the statute that there be a pending proceeding. The judge of the Indiana court would then issue a certificate stating the State had charged Forbes. This certificate was to be presented to a judge in Louisville (Jefferson County, Kentucky) who would set a hearing in which the Kentucky law prerequisites for compelling attendance in another state court could be heard. *Forbes v. State*, 793 N.E.2d 1112, 1118 (Ind.Ct.App. 2003).

It is clear that the process prescribed by the statute was not met here. Both the subpoenas served by the trooper in person and the subpoena mailed by the Clark County prosecutor's office were issued without a hearing. Neither subpoena was based on a certificate signed by the judge of an Indiana court and reciting the matters required by the statute. But the issue is whether the Uniform Act affords the exclusive procedure to obtain a witness from another jurisdiction. We hold, consistent with precedent in other states, that it is not.

■■■ As was held in the early days of statutory authority for compulsion of witnesses across state lines, the Uniform Act is permissive legislation. It is not the exclusive method to share information. *See, e.g., People v. Dozier*, 236 Cal.App.2d 94, 45 Cal.Rptr. 770, 777 (1965) ("The existence of permissive legislation to obtain the presence of witnesses from out of state is not a requirement that the machinery thus provided be used in every instance."). The procedure contemplated by the Kentucky law is for the benefit of the witness, not the parties. The issues to be heard in the receiving state (Kentucky) relate to the burden on the witness of testifying in another state, not concern for the parties.[1]

The witness remains free to waive the requirement of a hearing in the receiving state and agree to any means of presenting testimony or producing their documents in another state that are acceptable to them and comply with the Rules of Evidence. The hospital chose to surrender the documents in response to the subpoenas it received. Nothing prohibits a witness from voluntarily responding to a request to cross the state line to testify. The witness may require a subpoena, as the hospital did here. If so, that imposes the protections and conditions afforded by Kentucky law under its version of the Uniform Act, but the parties to the Indiana proceeding have no basis to complain if the witness chooses to waive its requirements and testify or supply documents voluntarily. The same is true if, as here, the documents are supplied in response to a subpoena that resulted from proceedings other than those provided by the Uniform Act.

## II. Court Approval of the Subpoenas

■■ In *Oman v. State*, 737 N.E.2d 1131, 1148 (Ind.2000), discussed below, this Court established a framework for Indiana prosecutors to obtain private records: (1) "a prosecutor acting without a grand jury must seek leave of court before issuing a subpoena *duces tecum* for the production of documentary evidence maintained by a third party," and (2) "the trial judge or magistrate will review the subpoena for reasonableness using the three-factor *City of Seattle* test."

*Oman* was handed down on September 26, 2000. The University of Louisville Hospital complied with Jefferson County's subpoena on September 18, and the Clark County subpoena on September 29, pursu-

---

**1.** The Kentucky statute requires the judge to determine that 1) the witness is material and necessary, 2) it will not cause undue hardship to the witness to be compelled to attend in the other state, and 3) the laws of the requesting state give the person protection from arrest and the service of civil and criminal process. Ky.Rev.Stat. Ann. 421.240.

ant to a process the State had initiated before September 26. *Oman* itself made clear that its requirements apply only to processes initiated after that date. 737 N.E.2d at 1138. Accordingly, the requirements announced in *Oman* are inapplicable here.

 Although the leave of court requirement established in *Oman* does not apply to these subpoenas, they must still meet the reasonableness requirement of the Fourth Amendment to the United States Constitution. Pursuant to *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), a subpoena *duces tecum* is reasonable if it is: 1) sufficiently limited in scope, 2) relevant in purpose, and 3) specific in directive so that compliance will not be unreasonably burdensome. *See also Oman,* 737 N.E.2d at 1141. Forbes contends that the first subpoena was not sufficiently limited because on its face it was not limited to blood alcohol tests and gave the troopers unbridled discretion as to the records to be taken. The subpoena served by the troopers sought "Medical Records of Darrell Lee Forbes, SSN [deleted], DOB [deleted]." There is no suggestion that Forbes had in fact been at the Louisville hospital on any prior occasion. However, at least theoretically, the subpoena could have called for Forbes's psychiatric records or other private information irrelevant to any pending charges. We agree that the subpoena was facially overbroad, but do not agree that the BAC test results must be suppressed for that reason. Had the hospital or Forbes objected to the subpoena at the time Trooper Ashby served the subpoena, we would be faced with a different case. However, the hospital in supplying the information did not object to the breadth of the subpoena and Trooper Ashby in serving it asked for only the BAC test results. To the extent Forbes has a right to keep other medical information private, that right to privacy is not implicated here because no protected information was sought or obtained. To be sure, the request for "medical records" might have been quashed as "overbroad" if the issue were raised before the hospital complied. But because only BAC results were produced, no interest would be furthered by requiring the State to obtain a more specific subpoena *duces tecum* and repeat the drill. In any event, Forbes concedes that the subpoena from Clark County was sufficiently specific in its request for "Certified copies of any and all medical records showing result of Blood Alcohol Content Test performed on DARRELL LEE FORBES, DOB [deleted], SS# [deleted], for [sic] on September 10, 2000."

 Finally, Forbes contends that the subpoena was defective because there was "little or no evidence that alcohol was involved" in the accident, thus rendering the subpoena irrelevant. We disagree. Trooper Ashby's affidavit establishing probable cause indicated that Forbes was driving at a high rate of speed and drove in a reckless manner. The officer noticed a stench of alcohol at the crash scene and alcoholic containers within plain view. Witnesses reported Forbes throwing beer cans out the window. Given these circumstances, Trooper Ashby's actions were relevant to and were appropriate responses during the course of a reasonable investigation.

## Conclusion

The trial court's ruling denying Forbes's motion to suppress is affirmed. This case is remanded to the trial court for further proceedings.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.